## STATE OF ARKANSAS VS. DEVERS.

1. JURISDICTION OF CIRCUIT COURTS: *How ascertained.*

The correct method of ascertaining the civil and criminal jurisdiction of the circuit courts, is to see what cases, or class of cases, are confided by the constitution exclusively to the jurisdiction of other tribunals; and the great residuum belongs exclusively, or concurrently, to the circuit courts.

2. JURISDICTION: *Concurrent.*

In cases of concurrent jurisdiction in different courts, the first exercising jurisdiction rightfully acquires control, to the exclusion of the other.

State of Arkansas vs. Devers.

3. CIRCUIT COURTS : *Can not be deprived of jurisdiction.*
It is not in the power of the legislature, under the provisions of the constitution, to deprive the circuit courts of all original jurisdiction of misdemeanors; and the act of the fifteenth of March, 1879, attempting it, is unconstitutional and void.

APPEAL from *Faulkner* Circuit Court.
Hon. J. W. MARTIN, Circuit Judge.
*Mr. Attorney General Henderson*, for the State.

ENGLISH, C. J. At the December term, 1878, of the circuit court of Faulkner county, George Devers was indicted for misdemeanors. There were two counts in the indictment, the first charging him with wearing a concealed weapon—a pistol; and the second charging him with carrying a pistol as a weapon.

At the March term, 1879, the defendant moved to dismiss the indictment, on the ground that the court had no jurisdiction to try the offense charged against him in the indictment, the jurisdiction being in justices of the peace of the county, etc.

On the hearing of the motion, the prosecuting attorney asked the court to make the following declarations of law :

1. "That the act of the fifteenth of March, 1879, giving justices of the peace exclusive jurisdiction of misdemeanors, is unconstitutional and void.

2. " That the constitutionality of said act does not affect, or take from this court its jurisdiction over indictments for misdemeanors found and duly returned into the court by the grand jury before the passage of the act."

The court refused to make these declarations of law, but declared the law to be, that " the exclusive jurisdiction to try misdemeanors is now vested in the justices of the peace,

State of Arkansas vs. Devers.

and there is no original jurisdiction in this court to try this cause, or to proceed further herein."

The court, accordingly, sustained the motion of defendant, and ordered the case dismissed and stricken from the docket; and the state appealed.

The first section of the act of the fifteenth of March, 1879 (*Acts of 1879, p. 84*), is : " That justices of the peace of this state shall have exclusive jurisdiction of all cases of misdemeanors, to try, and finally to determine the same; *provided*, however, that the circuit courts shall have concurrent jurisdiction in cases of false imprisonment and malfeasance in office."

The second section gives any person convicted before a justice of the peace, the right of appeal to the circuit court, on executing bond, etc.

The third section repeals conflicting laws.

No provision is made for the disposition of indictments pending in the circuit courts at the passage of the act.

The legislature attempted to deprive the circuit court of original jurisdiction of all misdemeanors except false imprisonment and malfeasance in office, and vest such jurisdiction exclusively in justices of the peace.

If this law be constitutional, justices of the peace now have exclusive original jurisdiction of all misdemeanors except false imprisonment and malfeasance in office, as to which only, the circuit courts retain concurrent jurisdiction.

By *sec. 15, Art. 6, of the Constitution of 1836*, it was provided that justices of the peace should have no jurisdiction to try and determine any criminal case or penal offense against the state, but might sit as examining courts, etc.

By an amendment of the constitution, passed by the two houses, ratified November 17, 1846, the general assembly

was empowered to confer such jurisdiction as it might deem proper on justices of the peace in prosecutions for assault and battery, and other penal offenses less than felony, which might be punished by fine only. *English's Digest, p. 71.*

By act of sixteenth of December, 1846 (*Acts of 1846, p. 59*), the legislature attempted to confer upon justices of the peace, jurisdiction to try and punish by fine, assaults, assaults and batteries, affrays, etc., without presentment or indictment by a grand jury.

In *Eason v. The State, 11 Ark., 481*, this act was held to be null and void, because in conflict with the fourteenth section of the Bill of Rights, which declared : "That no man shall be put to answer any criminal charge, but by presentment, indictment or impeachment;" and which the court held was not repealed, or modified, by the amendment to the constitution, ratified seventeenth of November, 1846.

The fourteenth section of the Declaration of Rights of the Constitution of 1864, was in these words: "That no man shall be put to answer any criminal charge, but by presentment, indictment or impeachment, *except as hereinafter provided.*"

And by a clause of section eighteen, article seven, such jurisdiction was given to justices of the peace as might be. provided by law "in prosecutions for assault and battery, and other penal offenses less than felony, punishable by fine only."

By a clause of section twenty-two, article seven, of the constitution of 1868, it was provided that : "In criminal causes the jurisdiction of justices of the peace shall extend to all matters less than felony for final determination and judgment."

And section nine of the Bill of Rights, declared that: "No man shall be held to answer a criminal offense unless on presentment or indictment of a grand jury, except in cases of impeachment, or in cases of petit larceny, assault and battery, affray, vagrancy, and such other minor cases as the general assembly shall make cognizable by justices of the peace," etc.

The fifth clause of *section 1642, of Gantt's Digest* (enacted while the constitution of 1868 was in force) provides that: "In criminal causes, the jurisdiction of justices of the peace shall extend to all matters less than felony, for final determination and judgment; *provided*, that circuit courts shall have jurisdiction concurrent with justices' courts in all such cases."

Thus it appears that at the time of the adoption of the present constitution, the circuit courts and justices of the peace had concurrent original jurisdiction of all criminal offenses less than felony—in other words, of all misdemeanors. *James Bradley v. State, 32 Ark., 725.*

Section eight, of the Declaration of Rights of the present constitution (1874) provides that: "No person shall be held to answer a criminal charge unless on the presentment or indictment of a grand jury, except in cases of impeachment or cases such as the general assembly shall make cognizable by justices of the peace, and courts of similar jurisdiction," etc.

And by the *third* clause of, section forty, article seven, it is provided that justices of the peace shall have *such jurisdiction of misdemeanors as is now, or may be, prescribed by law.*

By this clause, the criminal jurisdiction of justices of the peace is limited (except for examination, commitment, or bail) to misdemeanors; and it gave them such jurisdiction

of misdemeanors as was then, or might thereafter be, prescribed by law.

We have above shown that by the law in force when the constitution was adopted, justices of the peace had jurisdiction of all misdemeanors, and they will continue to have such jurisdiction until otherwise prescribed by law.

But by the law in force when the constitution was adopted, though they had jurisdiction of all misdemeanors, their jurisdiction of that class of crimes was not exclusive, but the circuit courts had concurrent jurisdiction with them of misdemeanors.

The act of fifteenth of March, 1879, attempts to deprive the circuit courts of all concurrent jurisdiction of misdemeanors, except false imprisonment and malfeasance in office, and, of course, the legislature may also deprive them of jurisdiction of the cases excepted, if it had power to divest them of jurisdiction of all other misdemeanors.

Is it, then, in the power of the legislature, under the provisions of the constitution, to deprive the circuit courts of all original jurisdiction of misdemeanors?

The constitution vests the judicial power of the state in a supreme court, circuit courts, county and probate courts, and in justices of the peace; but provides for the creation, by the general assembly, of municipal corporation courts, courts of common pleas, and separate courts of chancery, and prescribes what judicial power may be distributed to them when established.

The constitution prescribes, limits and defines, with more or less accuracy, the jurisdiction to be exercised by all of the courts except the circuit courts, and instead of attempting to define their jurisdiction (other than appellate), leaves to them the great residuum of civil and

criminal jurisdiction not distributed exclusively to other courts.

*Sections 4 and 5, of Art. 7,* define the jurisdiction of the supreme court, which is appellate, supervisory and ancillary, with original jurisdiction only in the cases specified in section 5.

Section 14 prescribes the superintending and appellate, but not the original, jurisdiction of the circuit courts.

Section 15 gives them jurisdiction in matters of equity until courts of chancery are established.

Sections 28 and 34 define the jurisdiction of county and probate courts, and section 40, of justices of the peace; and sections 43 and 32 prescribe and limit the jurisdiction that may be vested in corporation courts, and courts of common pleas.

The original civil and criminal jurisdiction of the circuit courts is not otherwise defined than as follows:

" Section 11. The circuit courts shall have jurisdiction in all civil and criminal cases, the exclusive jurisdiction of which *may not be vested* in some other court provided for by this constitution."

To maintain the constitutionality of the act of fifteenth of March, 1879, this section would have to be interpreted to read as follows:

" The circuit courts shall have jurisdiction in all civil and criminal cases, the exclusive jurisdiction of which *may not be vested (by the general assembly)* in some other court provided for by this constitution."

But the interpolation of the words, *by the general assembly,* would not only not be in harmony with the grammatical construction of the section, the verb "*may* (not) *be vested*" being in the present tense, and implying nothing to be done in the future, but it would leave the civil and

criminal jurisdiction of the circuit courts very much at the will of the legislature, which would be at variance with the judicial plan of the constitution.

For example, section 32 provides that: "The general assembly may authorize the judge of the county court, etc., etc., to hold a quarterly court of common pleas, etc.; which shall be a court of record, with such jurisdiction in matters of contract, and other civil matters, not involving title to real estate, as may be vested in such court."

Here the verb *may be vested*, is again used, but from its context it necessarily implies future legislative action.

Now suppose the meaning of *section 11* to be that "the circuit courts shall have jurisdiction in all civil and criminal cases, the exclusive jurisdiction of which may not be vested (by the general assembly) in some other court provided for by this constitution," and it would follow that the legislature might vest in a court of common pleas, established for any county, exclusive "*jurisdiction in matter of contract and other civil matters, not involving title to. real estate*," and utterly strip the circuit court of all original jurisdiction of such matters.

The true reading of *section 11*, viewed in the light of the judicial plan of the constitution, is manifestly this :

"The circuit court shall have jurisdiction in all civil and criminal cases, the exclusive jurisdiction of which may not be vested (*by this constitution*) in some other court provided for by this constitution."

The section, when so read, is not free from tautology, nor as euphonious as it was written by BROTHER EAKIN, who was a member of the convention and drafted it, but, so read, it more clearly expresses the intention of the framers of the constitution, and harmonizes with all of its

---

State of Arkansas vs. Devers

---

provisions distributing the judicial power among the courts.

By *section 14* the circuits are given a superintending control and appellate jurisdiction over all the courts inferior to them.

By *section 15*, they are to have jurisdiction in matters of equity until the legislature shall deem it expedient to establish courts of chancery.

Their original jurisdiction in *civil* and *criminal* cases is readily ascertained by comparing other sections of the article on the JUDICIAL DEPARTMENT with *section 11*, as above mentioned.

By *section 5*, the supreme court, in the exercise of original jurisdiction, may issue writs of quo warranto to the circuit judges and chancellors, when created.

This jurisdiction is perhaps exclusive in this court, as the circuit judges are of co-ordinate rank, as will be the chancellors when created.

By the same section the supreme court may issue writs of quo warranto to officers of political corporations when the question involved is the legal existence of such corporations.

In such cases, the circuit courts may, no doubt, exercise concurrent jurisdiction, as the jurisdiction of this court is not made exclusive.

By *section 28*, the county courts are given exclusive original jurisdiction in all matters relating to county taxes, roads, bridges, ferries, paupers, bastardy, vagrants, apprenticeship of minors, etc., etc., and, as to all such matters, the circuit courts are excluded from the exercise of original jurisdiction.

So, by *section 34*, the exclusive original jurisdiction of probate courts is provided for.

*Section 40*, which prescribes the jurisdiction of justices of the peace in civil and criminal matters, gives them no exclusive jurisdiction in civil cases, except in matters of contract where the amount in controversy does not exceed the sum of one hundred dollars, excluding interest. In all other civil cases, their jurisdiction, to the limited extent to which it is conferred, is concurrent with the circuit courts.

The framers of the constitution refused to give them exclusive jurisdiction in suits for the recovery of personal property, no matter how small the value, and in suits for damage to personal property, however trifling the injury—and gave them no civil jurisdiction whatever in cases of injuries to persons, or trespasses upon real estate.

By what consistent logic, therefore, may it be maintained, in the absence of any express provision of the constitution to that effect, that its framers intended to empower the legislature to confer upon them exclusive jurisdiction of all misdemeanors, many of which are grave offenses, involving the peace and good order of society, and some of them punishable by heavy fines and deprivation of liberty.

Down to the time of the adoption of the constitution of 1868, there was no attempt to confer jurisdiction upon justices of the peace of any misdemeanors except such as were punishable by fine only. That constitution opened the way to give them jurisdiction of all misdemeanors concurrently with the circuit courts.

The framers of the constitution of 1874 simply said, in effect, by the *third* clause of *section 40*, above copied, that they might continue to exercise such jurisdiction until otherwise prescribed by law, but there is nothing in this clause, or in the section of which it is a part, or in any section of the article on the judicial department, from which it may be fairly implied that the framers of the con-

stitution intended to leave the legislature at liberty to deprive the circuit courts of all jurisdiction of misdemeanors.

The correct method of ascertaining what jurisdiction the circuit courts have in civil and criminal cases, is to see what cases, or class of cases, are confided by the constitution exclusively to the jurisdiction of other tribunals, and the great residuum belongs concurrently or exclusively to the circuit courts.

There is no direct provision of the constitution giving the circuit courts jurisdiction of felonies. If we have not, as above, given the proper construction of *section 11;* and if the jurisdiction of all criminal cases is within the control of the legislature, there is no section or clause of the constitution that would expressly forbid the legislature from conferring upon justices of the peace exclusive jurisdiction of felonies, as well as misdemeanors. There is nothing in the literal reading of the Bill of Rights to prevent this, for *section 8* merely declares that: "No person shall be held to answer a criminal charge unless on the presentment or indictment of a grand jury, except in cases of impeachment or cases such as the general assembly shall make cognizable by justices of the peace, and courts of similar jurisdiction," etc.

And yet if the legislature were to attempt to strip the circuit courts of jurisdiction of felonies, and place the lives and liberties of men in the hands of justices of the peace, however intelligent that useful body of magistrates may be, it would strike bench, bar and people as an act at war with the spirit of the constitution, and an innovation upon the long established judicial policy of the state.

There need be no conflict or confusion in the exercise of concurrent jurisdiction of misdemeanors by the circuit courts and justices of the peace. In cases of concurrent

jurisdiction in different tribunals, the first exercising juris-
diction rightfully acquires the control, to the exclusion of
the other. *James Bradley v. State, 32 Ark., 725.*

The justices of the peace holding their courts in every
township, without terms, and always open, may well try
and punish summarily, most of the misdemeanors. The
grand juries, assembling but twice a year, may look over
their fields, and present to the circuit courts such cases as
may have been neglected by the justices of the peace,
and cases of a graver character, affecting the peace, morals
and good order of communities.

If the orderly and law-abiding people of the state prefer
to have all misdemeanors tried and punished summarily
before justices of the peace, they may accomplish their
preference of jurisdictions, regardless of the act of fifteenth
March, 1879, by causing offenders to be brought before
the justices. But if they are wanting in such zeal for the
public good, the grand juries, prosecuting attorneys and
circuit courts must make up for their shortcomings.

If we merely doubted the constitutionality of the act in
question, we would, according to the judicial custom, with
all due respect for the judgment of the legislative depart-
ment, resolve such doubt in favor of the validity of the
act. But being of the opinion that the act is an unwar-
ranted attempt to deprive the circuit courts of part of
their constitutional jurisdiction, we can not, in the con-
scientious discharge of judicial duty, do otherwise than
pronounce it invalid.

The judgment must be reversed, and the cause remanded
with instructions to the circuit court to reinstate the
cause and dispose of it according to law, and not incon-
sistent with this opinion.