TAYLOR *v.* NELSON.

Opinion delivered December 21, 1931.

*C. T. Cotham,* for appellant.

*D. D. Glover,* for appellee.

SMITH, J. The appellant bank made E. A. and Walter Nelson a loan of $3,000, which was secured by a deed of trust on a lot to which the Nelsons had the record title. At the time the loan was made an abstract of the title showed a perfect unincumbered title in the Nelsons. Default was made in the payment of the debt secured by the deed of trust, but, before filing suit to foreclose it, the bank caused the abstract to be brought down to date, and it was then disclosed that a warranty deed from the Nelsons to Dewey Roberts and his wife had been placed of

record. The deed of trust to the bank was executed February 24, 1930, and it was filed for record the following day. No one was occupying the mortgaged property at that time, although Mr. and Mrs. Roberts moved into it a few days later. The deed to the property from the Nelsons to the Roberts was dated February 10, 1930, but was not filed for record until April 19, 1930.

The bank filed suit to foreclose its deed of trust, and being advised by the abstract of the existence of the deed to the Roberts, they made the latter parties defendant. It was alleged by the bank that it had taken its deed of trust without notice or knowledge of the deed to the Roberts.

An answer was filed by the Roberts in which they admitted that the bank had taken its deed of trust without notice or knowledge of their deed, and that their deed was therefore subject to the deed of trust, but they filed a cross-complaint against the Nelsons in which they prayed judgment for damages for the breach of the warranty of their title.

The original complaint was filed May 28, 1930, and the Roberts filed their answer and cross-complaint on June 23, 1930. On July 30, 1930, a decree was rendered in favor of the bank for its debt against the Nelsons, and the mortgaged property was ordered sold. There was a sale pursuant to this decree, at which the bank was the purchaser, and this sale was later confirmed by the court.

On November 3, 1930, the Roberts filed a motion to set the decree aside and to impound a certain lien note alleged to be wrongfully held by the bank and to require the bank to account to them for the note or its proceeds.

Testimony was heard in support of and in opposition to this motion. The court declined to set aside the decree of the sale of the land and the sale thereunder, but did enter a decree requiring the bank to deliver up to or account for the note referred to in the motion, and this appeal is from that decree.

In support of this motion, it is insisted that the decree was prematurely rendered, in that ninety days had not elapsed after issues joined, nor had application been made or notice thereof been given to opposing counsel to try the cause sooner, as is required by act 37 of the Acts of 1929 (page 67, vol. 1, Acts 1929). See *Sisk* v. *Becker Roofing Co.*, 183 Ark. 101, 34 S. W. (2d) 1078.

This objection to the decree is answered by saying that the Nelsons filed no answer and were in default when the decree was rendered. The answer and cross-complaint filed by the Roberts raised no issue against the bank and did not question its right to the relief prayed. The decree did not undertake to adjudicate the matters set up in the Roberts cross-complaint, but these were reserved. We are of the opinion, therefore, that the decree of foreclosure was not prematurely rendered.

After having heard testimony on the motion to vacate the decree, the court made the following finding of fact: "The court finds from the preponderance of the evidence in this case that Walter Nelson and E. A. Nelson are insolvent, and were so insolvent when they transferred said note to the Community Bank & Trust Company as collateral on a past-due indebtedness due said bank." Upon this finding the court directed the bank to deliver the note in question to the Roberts and to account to them for any collections made on it.

It is apparent that this motion raised an issue not suggested by the original answer and cross-complaint of the Roberts. The testimony heard by the court on this motion is to the following effect. The Roberts owned a house and lot in the city of Hot Springs, which they sold for $3,250, and in payment therefor took the note of their purchaser dated 12-6-1929, and payable in installments of $31 each. This note was secured by a vendor's lien, and was drawn to include the interest in the monthly payments. After making this sale the Roberts contracted with the Nelsons, who were building contractors, to build them a house on the lot embraced in the original foreclosure suit. Under this con-

tract the Nelsons were to build the house and deliver possession thereof with an abstract of the title to the lot showing an unincumbered title. In payment therefor the Roberts paid $500 in cash, and were to pay $281 additional in cash upon the delivery of the abstract, which, however, was never delivered, and, in addition, they assigned to Nelson their purchase-money note given to them upon the sale of their lot.

The Roberts assigned this note to Walter Nelson by the following indorsement: "January 8, 1930. We hereby assign all our right, title and interest to the within note to Walter Nelson. (Signed) W. D. Roberts and Ollie Roberts." After receiving this note, Nelson deposited it with the bank for collection, and there was indorsed thereon the notation to, "credit all future payments to account of Walter Nelson."

In addition to the $3,000 note secured by the deed of trust herein foreclosed, Nelson was otherwise indebted to the bank, and he also desired additional credit, for which he applied and which was extended, and a new note covering the old balance and the new advance was made, and, as security therefor, Nelson assigned Roberts' note to the bank on April 3, 1930, by the following indorsement on the note: "For value received, I hereby assign and transfer the within note to the Community Bank & Trust Company, Hot Springs National Park, Arkansas, as collateral security for note of even date executed by me to said bank. [Signed] Walter Nelson."

This is the note referred to in the Roberts' motion to vacate the foreclosure decree, and the subject-matter of this appeal is the good faith of this transfer.

The court found that the Nelsons were insolvent when the assignment to the bank was made, although the motion contained no allegation to that effect. The testimony does show insolvency of the Nelsons at the time the testimony was taken, which was after the motion to vacate the decree had been filed, but does not show

whether the Nelsons were insolvent when the note was assigned on April 3, 1930.

This, however, is unimportant except as it bears upon the question of the good faith of the bank in taking the note as collateral to the new note which the bank took from Nelson upon lending him an additional sum of money. It may be said that this note of Nelson's to the bank was not paid, and, under the power there conferred, the bank sold Roberts' note, which had been deposited as collateral, for the full face value of the Roberts' note. The proceeds of this sale, which was made to the bank itself, were not sufficient to pay the note for which the Roberts' note was collateral.

It is insisted that the transaction whereby the Roberts' note was deposited with the bank as collateral to the loan to Nelson was fraudulent, in that the bank knew that Nelson was not the owner and had no right to so use the note.

The testimony establishes the fact very clearly that Nelson acquired this note as a payment on the house which he had built for the Roberts, but that Nelson was unable to convey an unincumbered title thereto, because he had mortgaged the lot on which the house stood, this being the mortgage which the original suit was brought to foreclose.

Without setting out the rather voluminous testimony, which we have carefully considered, upon this issue of fact, we announce our conclusion to be that the bank was not party to any fraudulent purpose of Nelson. It is true the consideration for the assignment of the note by the Roberts, which had been given them in payment for their home, has failed. They made this assignment in partial payment of the house and lot which Nelson had built for them, but which he had mortgaged to the bank, but it does not appear from the testimony that the bank was party to or was aware of this fraud. On the contrary, the cashier testified that, when Nelson proposed to use the Roberts' note, which had been assigned to him as herein shown, he declined to accept it unless a notation

of the assignment was made upon the margin of the deed record where the deed had been recorded in which the vendor's lien had been reserved which secured the purchase-money note, and on March 22, 1930, in the absence of any representative of the bank, Mr. and Mrs. Roberts made assignment of this lien to Nelson by indorsement to that effect upon the margin of the deed record. Thereafter, on April 3, 1930, Nelson executed the assignment hereinabove copied of the note to the bank.

If this transaction is what it appears to be, the bank took this note for value, before maturity, and without notice that Nelson did not have the title thereto, and, this being true, the bank acquired title to the note, however fraudulent the conduct of Nelson may have been in his dealings with the Roberts.

It is unnecessary to determine what the existing indebtedness of Nelson to the bank was, or what additional credit was extended when the collateral note was taken, as the law is settled that the indorsee of negotiable paper, taken before maturity, as collateral security for an antecedent indebtedness, in good faith and without notice of defenses which might have been available as between the original parties, holds the same free from such defenses. *Newell Construction Co.* v. *McConnell,* 156 Ark. 562, 246 S. W. 854.

The original cross-complaint filed by the Roberts did not question the good faith of the bank in the acquisition of the collateral note, and we think the testimony shows it was acquired in the usual and ordinary course of business, in good faith, for value, and before maturity. This being true, the decree directing the bank to surrender the collateral note to the Roberts is reversed, and the cause will be remanded with directions to dismiss the motion praying that relief. It is so ordered.