Marsh *v.* Marsh.

5-1679 320 S. W. 2d 754

Opinion delivered February 16, 1959.

*Kaneaster Hodges,* for appellant.

*John D. Eldridge, Jr., George P. Eldridge,* for appellee.

Ed. F. McFaddin, Associate Justice. The appellant is R. M. Marsh, Jr.; and the appellee is his mother, Mrs. Ruth Marsh, the widow of R. M. Marsh. This is an appeal by appellant from a judgment of the Probate Court which approved the Commissioner's report and assigned dower and homestead to the widow.

Mr. R. M. Marsh, a resident of Woodruff County, died intestate in 1947, survived by his widow, Mrs. Ruth Marsh, and his three children (all adults), being a daughter, Mrs. Kathleen M. Barber, and two sons,

Andrew L. Marsh and R. M. Marsh, Jr. (the appellant). Mr. Marsh owned, operated and lived on a farm of about 1,200 acres in Woodruff County; and after his death the widow and three children continued to farm the land by mutual consent. A partnership arrangement was made between the mother and the two sons, and the daughter received rents.

In May 1954 Mrs. Ruth Marsh filed her petition in the Woodruff Probate Court, praying for the assignment of her homestead and dower[1] in the said lands; and the heirs executed an entry of appearance which requested "the court to lay off the dower and homestead of Mrs. Ruth Marsh as soon as convenient."[2]

The Probate Court (then presided over by the Honorable A. L. Hutchins, Chancellor) made an order appointing Curtis A. Houston, Paul Bronte, and Vernon Huff, "to allot dower and homestead out of the lands owned by the late R. M. Marsh unto his widow, Mrs. Ruth Marsh." The said Commissioners met with Mrs. Ruth Marsh and the three Marsh children, and made an allotment and assignment of dower and homestead, which at that time was agreeable to all the heirs as

---

[1] § 62-601 Ark. Stats. relates to homestead; and § 62-704 Ark. Stats. relates to dower.

[2] The full instrument reads as follows:

"IN THE PROBATE COURT OF WOODRUFF COUNTY, ARKANSAS IN THE MATTER OF THE PETITION FOR THE ALLOTMENT OF DOWER AND HOMESTEAD OF MRS. RUTH MARSH, WIDOW OF R. M. MARSH, DECEASED.

*ENTRY OF APPEARANCE*

"We, the undersigned, R. M. Marsh, Mrs. Kathleen Marsh Barber, and Andrew Lee Marsh, and Nova Marsh and Dorothy V. Marsh, wives of R. M. Marsh and Andrew Lee Marsh, respectively, after being duly sworn, do hereby enter our appearance to the proceedings filed by Mrs. Ruth Marsh for the purpose of causing her homestead and dower interest in the lands owned by the late R. M. Marsh at the time of his death to be set aside and laid off to her.

"The undersigned, being all of the interested parties in said land, consent and agree that this cause may be tried at any time without the necessity of service of process on us and without the necessity of the statutory waiting period. The undersigned request the court to lay off the dower and homestead of Mrs. Ruth Marsh as soon as convenient.

/s/ Kathleen M. Barber
/s/ Dorothy V. Marsh
/s/ Andrew L. Marsh
/s/ R. M. Marsh
/s/ Nova Marsh."

well as the widow. The report of the Commissioners was duly filed. The Honorable Ford Smith became the Probate Judge on January 1, 1955; and because of former connections with the parties he made an exchange of circuits with the Honorable Elmo Taylor to hear and dispose of the dower and homestead matter. The divorced wife of R. M. Marsh, Jr. appeared in the Probate Court and obtained time to file her exceptions to the Commissioners' report. This was in 1955. She never filed any exceptions or objections of any kind, but her request for time caused the original delay in hearing the Commissioners' report.

In 1957 Mrs. Ruth Marsh moved for the approval of the Commissioners' report allotting dower and homestead; and, thereupon, her son, R. M. Marsh, Jr. filed his response to the Commissioners' report. The cause was heard on evidence taken *ore tenus* before the Probate Court, and the Commissioners' report was approved, and homestead and dower allotted to Mrs. Ruth Marsh, as reported. This appeal ensued. Other facts will be stated in the topics herein discussed. The appellant lists ten points in his brief on appeal to this Court; but we group and discuss the points in suitable topic headings.

I. *Abatement.* As heretofore recited, the petition of Mrs. Marsh was filed in the Probate Court in May, 1954; the Commissioners filed their report allotting dower and homestead to Mrs. Marsh in the specific lands on December 10, 1954; and the matter was not heard in the Probate Court until November 5, 1957. In the interim between the Commissioners' report and the hearing in the Probate Court, R. M. Marsh, Jr. had filed a suit (on February 25, 1957) in the Woodruff Chancery Court against his brother, his sister, and his mother, which suit alleged,[3] *inter alia:*

"The parties hereto cannot agree upon an equitable division of said lands, and it will be to the best

---

[3] The Chancery suit sought accounting from Andrew Marsh and Mrs. Ruth Marsh, and also sought other relief. Cross complaints and interventions of lienholders have expanded the issues in the Chancery suit, but it is unnecessary to dwell on these.

interests of all the parties hereto that the said lands be divided among them. The lands are not susceptible of division in kind without prejudice to the parties so it will be to the best interests of all parties that the lands be sold, save and except for the homestead estate of Mrs. Ruth Marsh, which plaintiff concedes cannot be sold, and that the proceeds of such sale be divided according to the interests of the parties hereto. The defendant, Mrs. Ruth Marsh, is sixty-seven years of age.''

Because of the said Chancery suit, the appellant says that the Probate proceedings involving the assignment of dower and homestead should abate. We do not agree with this contention. It is true that the court of equity has concurrent jurisdiction with the probate court in the assignment of dower in both real estate and personalty (Johnson v. Johnson, 92 Ark. 292, 122 S. W. 656; Kendall v. Crenshaw, 116 Ark. 427, 173 S. W. 393; Beal-Burrow D. G. Co. v. Kessinger, 132 Ark. 132, 200 S. W. 1002); but in Shields v. Shields, 183 Ark. 44, 34 S. W. 2d 1068, we held that when the Probate Court had already assumed jurisdiction to assign dower, then the Chancery Court should not thereafter assume jurisdiction: in other words, the Court first acquiring jurisdiction had the right to adjudicate the matter. In the present case, the Probate Court's jurisdiction was invoked in 1954; Commissioners were appointed, and they viewed the property and made their report. From the facts heretofore detailed it is clear that this Probate jurisdiction continued. It was not until 1957 that R. M. Marsh, Jr. invoked the Chancery jurisdiction in his suit against his mother and brother and sister, as previously mentioned; so the Chancery suit cannot be urged by him as a sufficient cause for abating the Probate jurisdiction to which he had previously agreed.

II. *Laches, Estoppel, And Abandonment.* Appellant argues that the delay in hearing the Probate cause has resulted in an abandonment by the widow of her claim in the Probate Court; that she is barred by

laches; and that she is estopped to ask for the assignment of dower in particular lands because she agreed with her two sons that all of the lands could be operated as a joint farming venture. Appellant also urges that the widow joined with the sons in mortgaging the lands and thereby estopped herself from making claims of dower. We find no merit in any of these contentions.

There is nothing whatsoever in the record to show that Mrs. Marsh ever abandoned the Probate proceedings. Her delay certainly did not amount to laches so far as the appellant is concerned because he was not prejudiced: he agreed with his mother and brother for the operation of the farm. Neither is there any merit to the matter of estoppel insofar as appellant is concerned: because his mother all the time had the right of dower and homestead, and he knew it and agreed to it. Some lienholder or mortgagee of the lands might possibly claim some matter of estoppel (see *Phillips* v. *Phillips*, 203 Ark. 481, 158 S. W. 2d 20); but certainly appellant has offered no evidence of any kind to support any estoppel as far as he is concerned.

III. *The Correctness Of The Probate Court Order.* Finally, appellant says that the Probate Court decided the case erroneously in approving the report of the Commissioners; and the great bulk of the testimony was taken on this issue. The Commissioners who viewed the lands and allotted the dower and homestead testified that they had known the lands for a long time; that when they met at the Marsh homestead they had aerial maps as well as a plat; and that they knew what was growing on the particular tracts. Mr. Houston (one of the Commissioners) testified: that both of the Marsh boys (the appellant and his brother, Andrew) were present and pointed out the rice land and the cotton land when the maps were spread out on a large table in the living room; and that the heirs helped in the selection of the cotton and rice land. This question was asked concerning the appellant: ''Did Mr. R. M. Marsh at that time raise any objection to the

manner or the actual selection of the dower? A. No, sir. I think we talked to everyone present and asked if it was satisfactory. Q. Was it? A. It was."

Mr. Houston also testified that it was an agreed division and that even though the Commissioners were exercising their own judgment, the assignment of dower and homestead as made was agreeable to all the parties. Mr. Paul Bronte, another Commissioner, testified to the same effect; and when asked by the Court as to whether the allotment of dower and homestead made in 1955 was still fair in 1957 at the time of the hearing, the witness said that he still considered the Commissioners' report to be a fair and equitable division. Certainly the widow is entitled to have dower and homestead allotted and admeasured in kind in the lands if such can be done without great prejudice to the parties (§ 62-717 Ark. Stats.). The great preponderance of the evidence supports the judgment of the Probate Court.

Affirmed.